GLENN B. McCORMICK
Acting United States Attorney
District of Arizona
GAYLE HELART
Assistant U.S. Attorney
California State Bar No. 151861
Email: Gayle.Helart@usdoj.gov
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. CR-20-00043-PHX-SMB |
| Plaintiff, | |
| vs. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| Abraham Isaac Aldrete, | |
| Defendant. | |

The United States, by and through undersigned counsel, submits its sentencing memorandum, in anticipation of the sentencing hearing currently scheduled for April 26, 2021. The government is in receipt of the Presentence Investigation Report, and agrees with its calculation of a Criminal History Category I, a final adjusted offense level of 37, which results in an advisory range of 210-240 months' of imprisonment, but which defaults to 240 months (the statutory maximum for Transportation of Child Pornography).

The government also acknowledges the probation officer's recommendation of 108 months (9 years) which would require acceptance of the Plea Agreement and a downward variance. (PSR p. 17).

The parties have stipulated to sentencing range of 96 - 168 months' of imprisonment (8-14 years). Aldrete has requested a sentence of 96 months (8 years), the low end of the negotiated range. The government is requesting both that this Court accept the parties'

stipulated range, and for this Court to impose a sentence of 150 months (12.5 years), to be followed by a lifetime of supervised release.

**Relevant Facts**

Aldrete, age 19, used his Twitter account to post information about selling links to his Dropbox and Mega.nz (like Dropbox) for child pornography. He sold the links for $10, $20, $50, and $100, depending on the amount of material. Counts 1, 2, and 3, reflect the three days of advertising child pornography, via links to his Twitter accounts, specifically March 27, 2019, March 26, 2019, and March 23, 2019.

In Count 4, the Transportation count to which he pleaded, Aldrete transported child pornography to his Twitter account (same account as identified in Count 1), detected by Twitter, on or about March 27, 2019. At the execution of the search warrant on July 10, 2019, Aldrete possessed two devices (an Apple iPhone and a desktop computer) and two accounts with child pornography images. These devices and accounts were charged in the Count 5 possession count.

As an example of Aldrete's intent and knowledge for the advertising counts, which this Court can consider as part of the entire investigation per the Plea Agreement, the government's evidence includes the statements made by Aldrete in a tweet, specifically (and in the Plea Agreement's Factual Basis, to which Aldrete agreed):

"Im selling mega links #underage #jailbait #megalinks #nudes https://t.co/WjfE1xbh8T."

Aldrete's account information also included:

    Full Name: i sell links

    Location:

    Description: prices $10 for smaller link $20 for large link $50 for 3 $100 for7

    URL:

Further, Aldrete's conversations with others supports he sold child pornography, and his own statements at the search warrant also support that he sold child pornography. For example, during one conversation on March 27, 2019:

    Individual: How old are the little girls in the links? (Age doesn't matter).

>
> Aldrete: I have how ever old you want.
>
> Individual: Around 12-16?
>
> Aldrete: I have that my prices are on my bio
>
> Individual How big are the small and large links exactly?
>
> Aldrete: Well, I do have a extra large file with 2000+ that I'm selling for 40. The large files have about 100+ some do have a about 80 the small files have less.

**At the search warrant,** Aldrete stated that three of the four devices of interest (Apple iPhone, Samsung Galaxy Edge cell phone, laptop computer) were in his room, and the fourth was in the office (a desktop computer). He admitted his cell phone number and email address, both pieces of information that were seen in the investigation attached to his Twitter account. Aldrete discussed his Twitter account, and money services he had (Paypal, a CashApp account, and Venmo account) to pay friends. When questioned about child pornography, Aldrete initially denied, but then admitted to having sought out child pornography files as a curiosity. He said he located child pornography by searching for #cp and #underage. He located an individual selling Mega.nz links on Twitter and purchased a link for $20. After that, he decided he would sell child pornography in a similar way because he was broke and needed money. He said he sold links for about three days and made about $300. He said he was not sexually attracted to minors and denied saving any files of child pornography (which was disproven by the investigation which found the files listed in Count 5 on devices and in online storage accounts).

In the Plea Agreement's factual basis, that was based on discovery given to the defense, Aldrete agreed that his collection included approximately 1,334 image files and 222 video files of child pornography. Further, his collection contained under age 12 material, babies and infant material and bondage / violent material.

### Discussion

The district court may consider without limitation, any information concerning the background, character, and conduct of the defendant, unless otherwise prohibited by law. U.S.S.G. § 1B1.4; *United States v. Boykin,* 785 F.3d 1352, 1363 (9th Cir. 2015) (appellate court rejecting defendant's argument that his criminal history was overstated, and affirming

district court's assessing points and considering prior vandalism and disturbing the peace convictions).

The Ninth Circuit has said that the prior scheme of upward and downward "departures" has been essentially replaced by the requirement that judges impose a "reasonable" sentence." *United States v. Mohamed*, 459 F.3d 979, 986 (9th Cir. 2006) (sentence of 60 months' imprisonment affirmed, even though advisory range was 12-18 months, for bomb hoax). This Court will first properly calculate the applicable advisory guidelines range, but then have the discretion to apply what it believes is appropriate, still encouraging consideration and analysis of the pre-*Booker* system of departures. *Id.* at 987. Indeed, the Supreme Court has stated that "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011).

Following the statutory language for 18 U.S.C. §2251 (statute for production and advertising child pornography) in the 2020 Edition of the Federal Criminal Code and Rules, some of the Congressional Findings were listed. Pub. L. 110-358, §102, Oct. 8, 2008, 122 Stat. 4001, was included and provided that:

(1) Child pornography is estimated to be a multibillion dollar industry of global proportions, facilitated by the growth of the internet.

(2) Data has shown that 83% of child pornography possessors had images of children younger than 12 years old, 39% had images of children younger than 6 years old, and 19% had images of children younger than 3 years old.

(3) Child pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed.

(4) Child pornography is readily available through virtually every Internet technology, including Web sites, email, instant messaging, Internet Relay Chat,

newsgroups, bulletin boards, and peer-to-peer.

(5) The technological ease, lack of expense, and anonymity in obtaining and distributing child pornography over the Internet has resulted in an explosion in the multijurisdictional distribution of child pornography.

(6) The Internet is well recognized as a method of distributing goods and services across State lines.

(7) The transmission of child pornography using the Internet constitutes transportation in interstate commerce.

In mitigation, Aldrete argues he made a mistake, his conduct was a misguided attempt to raise money for college tuition, and he was very young not realizing the consequences of his behavior which he does now. The government acknowledges that if, indeed, that is all the money Aldrete received (either $300 as he stated at the search warrant or $80 as he says now), he did not make the kind of money that websites who are selling child pornography files are presumably making. But, that isn't the point. Aldrete's conduct, though "small," is still a significant part in the marketplace of supply and demand to be doing it at all, and Aldrete is fortunate to have been caught in the earlier stages of his attraction to children and interest in selling the illegal material because he was broke. In other words, Aldrete may have been caught early, but his conduct is reflected in every of the seven Congressional findings listed above by the age of the children including the files he had (including infants / toddlers), the content (including bondage, and adults engaged in sex acts with the prepubescent children), using his Twitter account (a social media platform on the Internet), and Aldrete's making it so readily and easily available. Aldrete may have been a smaller entrepreneur, but no less harmful.

That said, the government is satisfied with a negotiated range term of 96-168 months (8-14 years) of consideration by this Court, and requests this Court accept the Plea Agreement. Aldrete is not exposed to the 15 year minimum mandatory term that Advertising Child Pornography carries in each of Counts 1-3, yet a term of 12.5 years, that the government seeks, is still significantly above the minimum mandatory term of 5 years

5

that Transportation of Child Pornography carries. With the Plea Agreement, Aldrete has resolved the matter short of a jury trial, and has agreed to a waiver of appeal, in exchange for a maximum of 14 years. The parties' negotiated range allows this Court to take into account the character letters that Aldrete offered, his young age, and yet the seriousness of collecting and profiting from the permanent recorded pictures traveling the internet of the most vulnerable individuals—children who never agreed to create them in the first place.

Aldrete may, or may not, have a budding sexual attraction to children. His collection may have been to view and enjoy, or it may have been to feed his links for profit and others' enjoyment. It may have been both, as the government theorizes. No matter the motive, Aldrete's conduct was reprehensible.

Respectfully submitted this 21st day of April, 2021.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

*s/Gayle L. Helart*
GAYLE L. HELART
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Philip A. Seplow
*Attorney for defendant.*

*s/ Erica Lane*